UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CARMEN ESTRADA,

        *Plaintiff*,

                        **MEMORANDUM AND ORDER**

    v.

                        18-cv-3530(KAM)

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
--------------------------------X
**MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), Carmen Estrada
("plaintiff") appeals the final decision of the Commissioner of
Social Security ("defendant"), which found that plaintiff was
not eligible for disability insurance benefits under Title II of
the Social Security Act ("the Act"), on the basis that plaintiff
is not disabled within the meaning of the Act.  Plaintiff
alleges that she is disabled under the Act and is thus entitled
to receive disability insurance benefits.

        Presently before the court is plaintiff's motion for
judgment on the pleadings (ECF No. 20, "Pl. Mem."), defendant's
motion for judgment on the pleadings (ECF No. 18, "D. Mem."),
defendant's response to plaintiff's motion (ECF No. 21, "D.
Reply Br.") and plaintiff's response to defendant's motion (ECF
No. 22, "Pl. Reply Br.".)  For the reasons stated below, the
Commissioner's motion for judgment on the pleadings is DENIED,

1

plaintiff's motion is GRANTED, and this action is REMANDED for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I.  Procedural History

On July 17, 2015, plaintiff Carmen Estrada filed an application for Title II disability insurance benefits, with a protected filing date of June 8, 2015.  (ECF No. 23, Joint Statement of Facts ("JSF").)  Plaintiff alleges that the onset date of her disability was July 1, 2008, and plaintiff claims that she is disabled as a result of diabetes, depression and stage 1 chronic kidney disease.  (ECF No. 24, Administrative Transcript ("Tr.") 180, 198.)  The onset date was later amended to October 1, 2014.  (Tr. 47-48.)  On October 21, 2015, plaintiff's claim was denied.  (Tr. 86.)  On November 19, 2015, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 93.)  On May 9, 2017, plaintiff appeared and testified before ALJ Laura Michalec Olszewski.  (Tr. 39.)  By a decision dated June 27, 2017, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits.  (Tr. 173.)

On July 3, 2017, plaintiff appealed the ALJ's decision to the Appeals Council.  (*Id.*)  On April 11, 2018, the Appeals Council denied review of the decision, thereby rendering the ALJ's decision the final decision in the case.  (Tr. 1.)  On

June 15, 2018, plaintiff filed the instant action in federal
court.  (*See generally,* ECF No. 1, Complaint.)

## II.   Medical and Non-Medical Evidence

### a. Plaintiff's Non-Medical History

Plaintiff was born on August 9, 1965, is 67 inches
tall and weighs 232 pounds.  (Tr. 155, 180.)  Plaintiff is not
fluent in English, although she can understand some when spoken
to.  (Tr. 49.)  Plaintiff went to school through the ninth grade
in Puerto Rico.  (Tr. 48.)  At plaintiff's ALJ hearing on May 9,
2017, plaintiff testified in Spanish through an interpreter that
her past work consisted of being a babysitter from 2009 to 2014
and a cleaner at a shopping mall from 2013 to 2014.  (Tr. 47,
53.)  She testified that she stopped working when she began to
have health problems.  (Tr. 54.)

Plaintiff has trouble with her legs, which limits the
amount of time she can stand and walk.  (Tr. 211-12.)
Consequently, she relies on her domestic partner, Tomas Soler,
to help her with doing tasks such as food shopping once a month
and preparing meals.  (*Id.*)  Plaintiff testified that she does
other limited chores around the house, such as mopping and
sweeping, but when she does, she must "take pills for [her]
pain."  (Tr. 58.)  She stated that she cannot stand for a long
time because of the pain she begins to feel.  (Tr. 63.)
Generally, plaintiff does not go outside much, and when she

does, she walks slowly with many rests.  (Tr. 210-11.)

Plaintiff testified that it is very difficult for her to use

public transportation because there are stairs.  (Tr. 63.)  She

stated, "I have to stop because I get upstairs.  And I am short

of breath or fatigued." (*Id.*)

  b. Plaintiff's Medical History

    i. *Medical Opinion of FEDCAP Physician Mehjabeen Ahmed, MD*

         On May 13, 2015, plaintiff, accompanied by Mr. Soler,

went to the FEDCAP offices for medical examination.  (Tr. 246.)

A work-up of plaintiff's condition was being undertaken as part

of a process of monitoring public assistance recipients in New

York City.  (JSF 12.)  Plaintiff underwent examinations,

laboratory tests and patient interviews by FEDCAP intake officer

Ramona Mercado and FEDCAP doctor Mehjabeen Ahmed, M.D.  (*See* Tr.

244-72.)  Plaintiff stated to the FEDCAP intake worker that she

was a diabetic, was anemic, and had varicose veins in her right

foot and legs.  (Tr. 247.)  Plaintiff stated that the varicose

veins prevented her from working because they made her unable to

stand for too long.  (*Id.*)  She also stated that she had a

history of depression since 1999 and a psychiatric

hospitalization secondary to a suicide attempt.  (Tr. 248-49.)

         Plaintiff told the FEDCAP intake worker that she had

been treated for her physical complaints by Albert Benchabbat,

M.D.  (Tr. 248.)  She began seeing Dr. Benchabbat in October

2014, but had to stop seeing him in February 2015 because she lost her medical insurance coverage. (Tr. 249.) When interviewed by Dr. Ahmed, he noted that plaintiff had a history of diabetes and hypertension. (Tr. 257.) Dr. Ahmed stated that plaintiff had difficulty ambulating, had poor concentration, was depressed and unmotivated. (*Id.*) Additionally, he stated that plaintiff had a burn on her right lower limb that was sustained a month prior while cooking. (*Id.*) Dr. Ahmed also stated that plaintiff was not compliant with her medication because of the lack of medical insurance coverage. (*Id.*) Dr. Ahmed linked her history of depression with the loss of medical insurance coverage and medication, and plaintiff's resulting poor concentration and lack of motivation. (*Id.*)

On May 14, 2015, results of blood tests given to plaintiff were abnormal. (Tr. 268.) Specifically, plaintiff's hemoglobin was 6.9 and a normal range of hemoglobin for women is 12.0 to 15.5. (*Id.*) Due to this low level of hemoglobin, plaintiff was advised to go to the Emergency Room as soon as possible. (Tr. 269.) Plaintiff's blood levels of glucose, potassium and albumin were also abnormal. (*Id.*)

On May 15, 2015, Dr. Ahmed diagnosed plaintiff with diabetes mellitus, essential hypertension, and a burn; all these conditions were current, stable, and treated. (Tr. 270.) Dr. Ahmed also diagnosed plaintiff with a depressive disorder and

iron deficiency anemia, both of which were current, unstable, and untreated.  (Tr. 271.)  Dr. Ahmed then listed work limitations caused by the conditions he had found on examination of plaintiff: "[l]imit/eliminate lifting, pushing, pulling, carrying, stooping, bending, reaching."  (Tr. 268.)  Further, he stated that the burn, depression, and anemia would all have an impact on plaintiff's work capacity.  (Tr. 270-71.)  Dr. Ahmed noted that plaintiff's medical problems needed to be addressed by her treating doctors before a functional assessment could be made, but thought that "[b]ased on my exam and psychosocial interview, client may potentially be eligible for disability benefits."  (Tr. 272.)

    ii. *Medical Opinion of Treating Source Albert Benchabbat, MD*

       On June 9, 2015, plaintiff's blood and urine test results, ordered by her treating primary care Dr. Albert Benchabba, showed multiple abnormal findings.  (Tr. 243.)  Plaintiff's hemoglobin level, which had been 6.9 three weeks before, had only risen to 7.1.  (*Id.*)  Additionally, the results indicated that plaintiff's diabetes was not being well controlled.  (*Id.*)  On June 15, 2015, Dr. Benchabbat ordered an abdominal and retroperitoneal ultrasound.  (Tr. 273.)  The results showed: "1) Discrepant renal size.  2) Borderline hepatosplenomegaly.  Clinical correlation recommended."  (*Id.*)

On July 6, 2015, Dr. Benchabbat diagnosed plaintiff with diabetes with neurological manifestations, type 2; diabetic ketoacidosis, uncontrolled; syncope; hypertension; anemias; chronic kidney disease, stage 1; and fibroid uterus.  (Tr. 274.) On August 18, 2015, Dr. Benchabbat noted that plaintiff had been suffering from severe back pain.  (Tr. 292.)  Additionally, he noted that plaintiff had kidney disease "and her diabetes is currently uncontrolled.  I have recommended that she [have] a blood transfusion."  (*Id.*)  Dr. Benchabbat also "recommended that she doesn't work at this time."  (*Id.*)

On September 1, 2015, Dr. Benchabbat added a second list of plaintiff's diagnoses, including back/lumbar pain; unspecified backache and sprain and strain of lumbosacral.  (Tr. 213.)  Additionally, appended notes included the information that plaintiff's parents had died of diabetes.  (Tr. 214.)  On March 27, 2017, Dr. Benchabbat wrote that plaintiff had left chest pain and anemia and received a chest x-ray that was abnormal.  (Tr. 290-91.)  Further, on June 30, 2017, Dr. Benchabbat wrote a treatment note to "Social Security" that "[plaintiff] has severe heart failure and renal failure.  She cannot work.  She is 100% disabled."  (Tr. 14.)

iii. *Medical Opinion of Treating Source Augusto Angulo, MD*

On June 25, 2015, plaintiff was referred for mental health treatment to Brookdale Hospital and was seen by Dr.

7

August Angulo, M.D.   (Tr. 294.)   Dr. Angulo found that plaintiff
had been depressed for two years due to lack of treatment.
(*Id.*)   Dr. Angulo noted that plaintiff's son was in jail which
led to poor sleep and frequent crying spells.   (*Id.*)   Dr. Angulo
diagnosed plaintiff with Depressive Disorder NOS and she was
admitted for outpatient treatment.   (Tr. 296.)   On July 21,
2015, Dr. Angulo changed plaintiff's diagnosis to major
depression, recurrent.   (Tr. 301.)   On August 17, 2015, Dr.
Angulo increased plaintiff's dosage of doxepin and some
improvement was noted.   (Tr. 317.)

> iv. *Medical Opinion of Treating Source Miguel Sanchez
>     Almira, MD*

On September 29, 2015, plaintiff was also seen by Dr.
Miguel Sanchez Almira, a psychiatrist.   (Tr. 323.)   She reported
to Dr. Sanchez Almira poor sleep, energy, and concentration, as
well as general depression due to her son's difficulties.   (Tr.
312-13, 323.)   Dr. Sanchez Almira stated that plaintiff has a
long history of chronic depression with periods of exacerbation.
(Tr. 323.)   Dr. Sanchez Almira diagnosed plaintiff with
dysthymia, insomnia, and ruled out major depressive disorder.
(Tr. 324.)   On November 24, 2015, Dr. Almira noted "[c]hronic
low back pain and Edema in L[ower] E[xtremities].   (Tr. 341.)

Plaintiff's psychiatry visits with Dr. Sanchez Almira
were monthly, between October 2015 and August 10, 2016.   (*See*

8

Tr. 332-98, 409-19.)  Plaintiff reported conflicts with her
children and family which caused stress, but she generally felt
"ok" or "fine."  (*See* Tr. 333, 341, 371, 377, 392, 398, 410,
419.)  Plaintiff's mental status findings were unremarkable and
consistent with her presentation at the initial intake.  (*See*
Tr. 295-96, 312, 315-17, 333, 377, 398, 410, 419.)  At her
visits on February 17, 2016 and May 18, 2016, plaintiff reported
being "stressed out."  (Tr. 370, 391.)  On March 1, 2017,
plaintiff's final visit, she showed no changes in her symptoms
or mental status deficit.  (*See* Tr. 459-60.)  Further, she
generally exhibited normal gait and station.  (*See* Tr. 324, 333,
410, 460.)  However, on January 20, 2016, Dr. Sanchez Almira
reported that plaintiff had "[e]dema lower extremities" and on
March 16, 2016 that she had suffered from "[c]hronic back pain."
(Tr. 358, 377.)

    v. *Medical Opinion of Treating Source Susie Collazo, LCSW*

        On July 21, 2015, plaintiff began seeing Brookdale
counselor Susie Collazo, L.C.S.W.  (Tr. 304.)  At the initial
examination, Ms. Collazo reported that plaintiff was casually
dressed, neatly groomed, cooperative, and she made good eye
contact.  (Tr. 307.)  Plaintiff exhibited a normal mood, full
affect, full orientation, and a normal thought process.  (Tr.
309.)  Plaintiff's insight, judgment, impulse control, memory,
and fund of knowledge were fair, and that she appeared to have

below-average intelligence.  (*Id.*)  Plaintiff was treated by Ms.
Collazo approximately monthly until September 1, 2016.  (*See* Tr.
320-345.)  Plaintiff often indicated that she felt "okay" (*see*
Tr. 350, 368, 383, 404, 425) or "good" (*see* Tr. 347, 407),
although she at times felt sad (Tr. 320) or stressed (Tr. 389.).
Ms. Collazo did not record any observations except plaintiff's
neat grooming and dress.  (*See* Tr. 320, 330, 389, 407, 425.)

    vi. *Medical Opinion of Consultative Examiner Johanina
        McCormick, Ph.D.*

      On September 24, 2015, plaintiff was seen by the
Commissioner's consulting psychologist Johanina McCormmick.
During the examination, Dr. McCormick noted that plaintiff was
well groomed but had an overall "poor" presentation.  (Tr. 276.)
Plaintiff's thoughts were coherent and goal directed, without
hallucinations or delusions displayed during the examination.
(*Id.*)  Dr. McCormick found that the patient had "impaired"
attention and "markedly impaired" memory "due to cognitive
challenges."  (*Id.*)  Dr. McCormick noted that plaintiff would be
"markedly impaired maintaining a regular schedule and learning
new tasks" and "moderately to markedly impaired maintaining
attention and concentration."  (Tr. 277.)  However, Dr.
McCormick further noted that plaintiff could follow and
understand simple directions and she could perform simple tasks
independently.  (*Id.*)  Plaintiff could make appropriate

decisions and relate with others.  (*Id.*)  Dr. McCormick
diagnosed plaintiff with "[u]nspecified depressed disorder,
provisional" and "[m]ild neurocognitive disorder, provisional."
(*Id.*)

> vii. *Medical Opinion of Consultative Examiner John Fkiaras,
> MD*

On October 2, 2015, plaintiff was seen by the
Commissioner's consulting doctor, Dr. John Fkiaras.  (Tr. 279-
283.)  Dr. Fkiaras reported that plaintiff had told him she was
suffering from intense low back shooting pain "which radiates to
the bilateral lower extremities" causing difficulty walking even
a short distance, climbing, standing more than a few minutes,
sitting for more than half an hour and lifting any weight.  (Tr.
279.)  Oral medications only offered mild pain relief.  (*Id.*)
Dr. Fkiaris also reported that plaintiff described her history
of diabetes.  (*Id.*)  The diabetes was being "treated with oral
medications and insulin."  (*Id.*)  Plaintiff also reported having
a history of kidney complications secondary to diabetes.  (*Id.*)
Plaintiff complained of numbness bilaterally in her hands and
feet, experienced dizziness, and blurry vision, and had a
history of syncope.  (*Id.*)  Plaintiff's hypertension was being
treated with oral medications.  (*Id.*)

Dr. Fkiaras concluded that plaintiff's physical
examination produced normal results for most body systems

including eye, ear, nose, and throat; chest and lungs; heart;
and abdomen. (Tr. 281.) Plaintiff displayed a full range of
motion in the cervical spine, shoulders, elbows and wrists, and
in the knees and ankles. (*Id.*) However, the plaintiff's range
of motion in her lumbar spine was reduced with "pain to
palpation of the lumbar spine," and there was a loss in range of
motion of the hips. (*Id.*) Dr. Fkiaras found "decreased
sensation to light touch to the bilateral hands and bilateral
feet." (*Id.*) Plaintiff presented with a "slow gait with and
without a cane." (Tr. 280.) The cane was used for "pain,
weight, bearing, and balance." (*Id.*) Dr. Fkiaras thought that
it was "medically necessary when the claimant is in more severe
pain." (*Id.*) Dr. Fkiaras stated that plaintiff:

> should avoid any heavy lifting, carrying,
> pushing, or pulling. The claimant should
> avoid any squatting, kneeling, and crouching.
> The claimant has a moderate limitation
> climbing stairs. The claimant has a moderate
> limitation standing extended periods. The
> claimant has a mild to moderate limitation
> sitting extended periods. The claimant has a
> mild to moderate limitation walking. The
> claimant is restricted from activities which
> require exposure to unprotected heights. The
> claimant is restricted from driving and
> operating machinery.

(Tr. 282.)

## LEGAL STANDARD

Unsuccessful claimants for disability benefits under
the Act may bring an action in federal district court seeking

judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla,'" and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The

reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant meets this requirement when he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw,* 221 F.3d at 131-32. The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's conditions meet the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> "[I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a

14

> determination of disability, and (4) that the
> claimant is not capable of continuing in [her]
> prior type of work, the Commissioner must find
> [her] disabled if (5) there is not another
> type of work the claimant can do."

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhard*, 335
F.3d 99, 106 (2d Cir. 2003) (alterations in original)); *see also*
20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must
consider whether "the combined effect of any such impairment . .
. would be of sufficient severity to establish eligibility for
Social Security benefits."  20 C.F.R. § 4040.1523.  Further, if
the Commissioner does not find a combination of impairments, the
combined impact of the impairments, including those that are not
severe (as defined by the regulations), will be considered in
the determination process.  20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step
framework, the claimant bears the "general burden of proving . .
. disability."  *Burgess*, 537 F.3d at 128.  At step five, the
burden shifts from the claimant to the Commissioner, requiring
that the Commissioner show that, in light of the claimant's
residual functional capacity, age, education, and work
experience, the claimant is "able to engage in gainful
employment within the national economy."  *Sobolewski v. Apfel*,
985 F. Supp 300, 310 (E.D.N.Y. 1997).

15

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (*quoting Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

## DISCUSSION

### a. The ALJ's Disability Determination

At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since the application date of June 8, 2015.  (Tr. 29.)

At step two, the ALJ found that plaintiff suffered from severe impairments of diabetes mellitus, kidney disease, hypertension, peripheral neuropathy, recurrent arrhythmias, and depression.  (*Id.*)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  The ALJ found that plaintiff has moderate limitations in understanding, remembering, or applying information.  (Tr. 29.)  The ALJ found that plaintiff has good

16

short-term and long-term memory, her thought process was goal
directed, and she had good attention, impulse control, insight,
and judgment.  (*Id.*)  The ALJ found further that plaintiff has
mild limitations when interacting with others and she has close
and supportive friendships and family relationships.  (*Id.*)  The
ALJ also found that plaintiff had moderate limitations with
regard to concentrating, persisting, or maintaining pace;
plaintiff is moderately to markedly impaired with maintaining
attention and concentration; plaintiff has experienced mild
limitations for adapting or managing herself; plaintiff can cook
two or three times a week, clean once a week, do laundry once a
week, and food shop once a month.  (Tr. 30.)

        The ALJ determined that plaintiff's mental impairment
did not meet or medically equal the criteria of Listing 12.04.
(*Id.*)  In making this finding, the ALJ considered whether the
"paragraph B" criteria were satisfied.  (Tr. 29-30.)  The ALJ
concluded that plaintiff's mental impairment did not cause at
least two "marked" limitations or one "extreme" limitation, and
thus the "paragraph B" criteria were not satisfied.  (Tr. 30.)
The ALJ also considered whether the "paragraph C" criteria were
satisfied.  (*Id.*)  However, the evidence failed to establish
the presence of the "paragraph C" criteria.  (*Id.*)

        At step four, the ALJ found that plaintiff had the
residual functional capacity ("RFC") to perform light work as

17

defined in 20 C.F.R. § 416.967(b). (*Id.*)  In arriving at this
RFC, the ALJ stated that:

> Specifically, claimant can work at the light
> exertional level in that she can lift and/or
> carry 20 pounds occasionally and 10 pounds
> frequently.  She can sit for six hours in an
> eight-hour workday, as well as stand and/or
> walk for six hours in an eight-hour workday.
> Claimant can occasionally climb ramps and
> stairs but should never climb ladders and
> scaffolds.  She can occasionally balance and
> stoop; but should never kneel, crouch and
> crawl.  She should avoid unprotected heights,
> operating heavy machinery and operating motor
> vehicles.  In addition, due to claimant's
> mental impairment, she should work in a low
> stress environment, which is defined as
> occasional use of judgment, occasional
> decision-making, and occasional changes in a
> work setting.  Claimant can also perform
> simple and routine tasks.

(*Id.*)  The ALJ considered opinion evidence in accordance with
the requirements of 20 C.F.R. § 416.927 and Social Security
Rulings 96-2p, 96-5p, 96-6p and 06-3p.  (*Id.*)  The ALJ accorded
little weight to the opinions of Dr. Benchabbat because the ALJ
determined that they were not supported by clinical or
laboratory findings and were not consistent with the record,
which shows that plaintiff had received conservative treatment.
(Tr. 31.)  Additionally, the ALJ accorded little weight to the
opinions of Dr. Fkiaras and Dr. McCormick because the ALJ found
that they are independent consultative examiners, their opinions
were not consistent with the record as a whole, and their
opinions were not supported by relevant evidence.  (Tr. 32-33.)

18

Further, the ALJ found that their opinions were based solely on plaintiff's subjective complaints during a one-time exam rather than objective findings.  (*Id.*)  Dr. Fkiaras did not have the benefit of the entire medical record, which shows conservative treatment.  (Tr 32.)

Further, the ALJ found that nowhere in the record is a cane prescribed to plaintiff, although the plaintiff testified that it was prescribed.  (*Id.*)  The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (Tr. 34.)

At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy, specifically, the past relevant work as a cleaner (DOT 302.685-010), which is unskilled and a light level of exertion.  (*Id.*)  Although the ALJ found plaintiff capable of performing past relevant work, the ALJ also found that there are other jobs existing in the national economy that she is also able to perform.  (*Id.*)  The ALJ found that on the date the application was filed, plaintiff was closely approaching an advanced age.  (*Id.*; 20 C.F.R. § 416.963.)  The ALJ further found that plaintiff had a limited education and was able to communicate in English.  (*Id.*; 20 C.F.R. § 416.964.)

The ALJ concluded that, in the alternative, considering plaintiff's age, education, work experience, and residual functional capacity, there were other jobs that exist in significant numbers in the national economy that the claimant could also perform.  (*Id.*; 20 C.F.R. §§ 416.969, 416.969(a).) At the ALJ hearing, Molly Malloy Kelley, a vocational expert, testified that given all the above factors plaintiff would be able to perform the requirements of representative occupations such as Garment Sorter (DOT 222.687-014), which is unskilled and a light level of exertion, and exists in numbers of 75,000 in the national economy; Laundry Sorter (DOT 361.687-014), which is unskilled and a light level of exertion and exists in numbers of 65,500 in the national economy; and a Garment Bagger (DOT 920.687-018), which is unskilled and a light level of exertion; and exists in numbers of 25,000 in the national economy.  (Tr. 35, 69-70.)  Therefore, the ALJ found that plaintiff had the RFC to perform the full range of light work, and a finding of "not disabled" was directed by Medical-Vocational Rule 202.11.  (Tr. 35.)

Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 416.920(g), since June 8, 2015, the date the application was filed. (Tr. 35.)

## b. The ALJ's Error in Applying the Five-Step Analysis

The ALJ committed legal error at step five by incorrectly applying Medical-Vocational Guideline (commonly referred to as a "Grid Rule") 20 C.F.R Part 404, Subpart P, Appendix 2, Rule 202.11, which applies specifically to someone who has a "[s]killed or semiskilled" work history.  20 C.F.R Part 404, Subpart P, Appendix 2, Rule 202.11 ("Rule 202.11").

For the reasons described below, the court finds that the ALJ should have applied 20 C.F.R Part 404, Subpart P, Appendix 2, Rule 202.09 ("Rule 202.09"), the application of which results in a finding of disability.

Rule 202.09 "applies to those whose education is found to be 'illiterate or unable to communicate in English'[1] and whose previous work experience is 'unskilled or none' and directs a finding of disabled.  [Rule] 202.11...direct[s] a finding of disabled for individuals whose education is 'limited or less' and whose previous work experience was 'skilled or semiskilled,' whether or not the skills are transferable. In other words, with respect to individuals who are closely approaching advanced age,

---

[1]    Though "inability to communicate in English" remains the correct standard for the instant case, filed on July 17, 2015, for cases filed from April 27, 2020 forward, the Social Security Administration has updated the rules to remove this language. *See* Removing Inability To Communicate in English as an Education Category, 85 FR 10586-01 ("We are finalizing our proposed regulations to eliminate the education category 'inability to communicate in English' when we evaluate disability claims for adults under titles II and XVI of the Social Security Act (the Act).").

Table 2 directs finding of disabled for those individuals 'who are illiterate or unable to communicate in English.'" *Jimenez v. Berryhill*, No. 16-CV-3972, 2018 WL 4054876, at *6 (E.D.N.Y. Aug. 24, 2018).

Two findings undergird the ALJ's misidentification of Rule 202.11 as the proper grid rule to use here.  First, the ALJ's finding that plaintiff is able to communicate in English is clearly erroneous and unsupported by substantial evidence. (Tr. 34.)  The record establishes that plaintiff does not read, write, speak or understand English, and required a Spanish-English translator to communicate with people speaking in English.  (*See, e.g.,* Tr. 196, 244, 247, 257, 275, 307.) Defendant concedes that plaintiff is unable to communicate in English. (D. Mem. 15.)  Thus, the court finds that during the period at issue, plaintiff was unable to communicate in English.

Second, the ALJ determined that the plaintiff was capable of "performing past relevant work as a Cleaner (DOT 302.685-010), which is unskilled...." (Tr. 34.)  The defense argues that the ALJ relied upon the vocational expert's characterization of plaintiff's babysitting work as a "Child Monitor" to find plaintiff not disabled in step five.  (D. Reply Br. 2-4.)  Because "Child Monitor" is "semiskilled" work, the defense argues that the ALJ properly applied Rule 202.11. However, the ALJ did not make a determination that the plaintiff

has past work history as a "Child Monitor," or any other work beyond the "unskilled" work of Cleaner.  (Tr. 34-35.)  The Court cannot accept *post hoc* rationalizations the Commissioner now wishes to introduce regarding plaintiff's purported history of "semiskilled" work, given the lack of any corresponding discussion in the ALJ's decision.  *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court "'may not accept appellate counsel's post hoc rationalizations for agency action.'" (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999))).  The ALJ's only reference to the vocational expert's testimony is to support a finding that other "unskilled" occupations exist in the national economy, similar to plaintiff's past work as a "Cleaner."  (Tr. 34-35.)

Rule 202.09 is the correct standard, as it specifically applies to someone with plaintiff's vocational profile who, at age 53, with the exertional capacity for light work as reflected in the ALJ's RFC finding at step four, is also both "unable to communicate in English" and has historically performed "unskilled" work.  The differentiating factors between Rule 202.11 and 202.09 are work experience and the ability to communicate in English.  Rule 202.11 applies to an individual who has "[s]killed or semiskilled" work experience without transferable skills, whereas Rule 202.09 applies to an individual with only "[u]nskilled or [no]" work experience, who

23

is unable to communicate in English.  (Rules 202.11, 202.09.)
For a 53-year old claimant who is "closely approaching advanced
age" with "skills that are not readily transferable to a
significant range of semi-skilled or skilled work that is within
the individual's functional capacity," who possesses
"limitations in vocational adaptability represented by
functional restriction to light work," and where claimant's
"vocational scope is further significantly limited by
illiteracy," including an inability to communicate in English,
"a finding of disability is warranted."  20 C.F.R. Part 404,
Subpart P, Appendix 2, Sec. 202.00(c)-(d); *see also Clark v.
Berryhill*, 697 F. App'x 49, 51 (2d Cir. 2017), *Draegert v.
Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (describing similar
Grid Rule based analyses for claimants with different
characteristics).

Because the ALJ committed legal error in making her
determination, the court finds that the ALJ's decision is not
supported by substantial evidence.  "Where there is a reasonable
basis for doubt whether the ALJ applied correct legal
principles, application of the substantial evidence standard to
uphold a finding of no disability creates an unacceptable risk
that a claimant will be deprived of the right to have her
disability determination made according to the correct legal
principles."  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.

1987).  Therefore, the court concludes that plaintiff is disabled per Rule 202.09.  The court respectfully remands the case to the ALJ for the calculation of benefits.

**CONCLUSION**

Federal regulations explicitly authorize a court, when reviewing decisions of the Social Security Administration, to reverse a decision of the Commissioner.  42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.")

The court finds that the ALJ erred in finding plaintiff not disabled.  Accordingly, plaintiff's motion is GRANTED, Commissioner's motion is DENIED, and this case is REMANDED for the calculation of benefits in accordance with this Memorandum and Order.  The clerk is respectfully requested to enter judgment for plaintiff and close this case.


**SO ORDERED.**

DATED:      June 23, 2020
            Brooklyn, New York

                              _____/s/_____
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge